**RECORD NO. 15-20706**

In The
# United States Court of Appeals
For The Fifth Circuit

## GEOPHYSICAL SERVICE, INCORPORATED,

*Plaintiff – Appellant*,

## v.

## TGS-NOPEC GEOPHYSICAL COMPANY,

*Defendant – Appellee*.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON

————————

## REPLY BRIEF OF APPELLANT

————————

Joel B. Rothman
SCHNEIDER ROTHMAN INTELLECTUAL
  PROPERTY LAW GROUP, PLLC
4651 North Federal Highway
Boca Raton, Florida  33431
(561) 404-4350

*Counsel for Appellant*

Brent T. Caldwell
Matthew J. M. Prebeg, Ph. D.
PREBEG, FAUCETT
  & ABBOTT, P.L.L.C.
8441 Gulf Freeway, Suite 307
Houston, Texas  77017
(832) 742-9260

*Counsel for Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

ARGUMENT ..........................................................................................1

I.     GSI'S COMPLAINT STATES A CLAIM FOR DIRECT
INFRINGEMENT BY IMPORTATION AND TGS' FIRST
SALE DEFENSE DOES NOT APPLY ...............................................1

     A.     TGS's futility argument is wrong because *Kirtsaeng* held
that "lawfully made under this title" imposes a non-
geographical limitation, and therefore means "in
accordance with" or "in compliance with" the U.S.
Copyright Act..................................................................3

     B.     Justice Eidsvik's creation of a "compulsory license"
under Canadian law is inconsistent with the U.S.
Copyright Act and therefore the first sale doctrine does
not apply.........................................................................6

     C.     The act-of-state doctrine does not apply ...................10

II.     GSI'S COMPLAINT STATES A CLAIM FOR
CONTRIBUTORY COPYRIGHT INFRINGEMENT AND
THIS CLAIM IS NOT ENTIRELY EXTRATERRITORIAL...........12

III.     THE DISTRICT COURT'S ATTORNEYS' FEE AWARD
SHOULD BE REVERSED ...............................................................14

     A.     *Hogan's* directive to award fees routinely conflicts with
*Fogerty's* instruction that prevailing plaintiffs and
defendants should be treated alike ...........................14

     B.     The district court failed to correctly apply the Fogerty
factors and abused its discretion ..............................15

CONCLUSION .....................................................................................................18

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Fogerty v. Fantasy, Inc.*,
    510 U.S. 517 (1994)............................................................................14, 15

*Hogan Sys., Inc. v. Cybresource Int'l, Inc.*,
    158 F.3d 319 (5th Cir. 1998) ...............................................................14, 18

*Hunn v. Dan Wilson Homes, Inc.*,
    789 F.3d 573 (5th Cir. 2015) .......................................................................14

*In re Virgin Offshore USA, Inc.*,
    No. 13-79, 2013 U.S. Dist. LEXIS 128995 (E.D. La. Sep. 10, 2013) .... 17-18

*John Wiley & Sons, Inc. v. Kirtsaeng*,
    605 F. App'x 48 (2d Cir. 2015) ...................................................................15

*Kirtsaeng v. John Wiley & Sons, Inc.*,
    133 S. Ct. 1351 (2013)........................................................................*passim*

*Matthew Bender & Co. v. W. Pub'g Co.*,
    240 F.3d 116 (2d Cir. 2001) .......................................................................15

*McGaughey v. Twentieth Century Fox Television*,
    12 F.3d 62 (5th Cir. 1994) ..........................................................................14

*MGM Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005).....................................................................................12

*Quality King Distribs. v. L'Anza Research Int'l*,
    523 U.S. 135 (1998).......................................................................................5

*Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*,
    682 F.3d 292 (4th Cir. 2012) .......................................................................13

*Virgin Records Am., Inc. v. Thompson*,
  512 F.3d 724 (5th Cir. 2008) ........................................................................14

*Viva Video, Inc. v. Cabrera*,
  9 F. App'x. 77 (2d Cir. 2001) ......................................................................17

## STATUTES

11 U.S.C. § 365 ............................................................................................18

17 U.S.C. § 106 ........................................................................................1, 12

17 U.S.C. § 106(3) ...........................................................................1, 2, 12, 16

17 U.S.C. § 109 ..............................................................................................3, 6

17 U.S.C. § 109(a) .......................................................................................3, 4, 8

17 U.S.C. § 115 ..............................................................................................9

17 U.S.C. § 115(a) .........................................................................................9

17 U.S.C. § 115(b) .........................................................................................9

17 U.S.C. § 115(c) .........................................................................................9

17 U.S.C. § 501 ......................................................................................1, 2, 12

17 U.S.C. § 505 ...........................................................................................15

17 U.S.C. § 602(a) ..............................................................................*passim*

17 U.S.C. § 602(a)(1) ...................................................................................1, 2

## <u>RULES</u>

Fed. R. Civ. P. 12(b)(6) ............................................................................4, 6, 10

Fed. R. Civ. P. 12(c) ......................................................................................6

Fed. R. Civ. P. 12(d) .................................................................................6

Fed. R. Civ. P. 56 .....................................................................................6

## OTHER AUTHORITIES

2-8 *Nimmer on Copyright* § 8.13[B][3][c][v][I] (2015) ...........................8

5-17 *Nimmer on Copyright* § 17.02 (2015) ...........................................13

Agreement on Trade-Related Aspects of Intellectual Property Rights, Art. 13
(Annex 1C of the Marrakesh Agreement Establishing the World Trade
Organization) accessible at https://www.wto.org/english/tratop_e/trips_e/
t_agm0_e.htm...........................................................................................9

**ARGUMENT**

### I.   GSI'S COMPLAINT STATES A CLAIM FOR DIRECT INFRINGEMENT BY IMPORTATION AND TGS' FIRST SALE DEFENSE DOES NOT APPLY

GSI's direct infringement claim in its complaint has always been based upon the facts set forth in Exhibit A (ROA.21-25) showing TGS violated GSI's distribution right under 17 U.S.C. § 106(3), as applied to importation by 17 U.S.C. § 602(a), when it imported copies of GSI's seismic works from Canada to Houston, Texas.

TGS simply ignores the allegations in GSI's complaint. The district court simply ignored the allegations in GSI's complaint. This Court should not!  The copying and importation of GSI's seismic works by TGS from Canada to TGS's office in Houston, Texas is alleged in the facts section of the complaint. (ROA.16-17).  Count I of the complaint for direct infringement contains the allegation that "TGS copied and distributed the GSI Works…without GSI's authorization in violation of 17 U.S.C. § 501." (ROA.18).  Section 602(a)(1) provides that "[i]mportation into the United States, without the authority of the owner of copyright under this title, of copies or phonorecords of a work that have been acquired outside the United States is an infringement of the exclusive right to *distribute* copies or phonorecords under section 106, *actionable under section*

*501*." 17 U.S.C. § 602(a)(1) (emphasis added).  Affirmance is possible only if this Court also ignores GSI's complaint.

On its face, GSI's complaint alleges infringement by importation.  While it is true that GSI did not use the word "importation," no rule of pleading that either GSI or TGS or the district court has found requires it.  GSI explained in its opposition to TGS's motion to dismiss that infringement by importation in violation of § 602(a) was GSI's theory of direct infringement. (ROA.202).  The district court failed to comprehend this.  Neither of its decisions dismissing GSI's complaint, nor its decision granting TGS attorneys' fees, acknowledges GSI's theory of direct infringement by importation.  The district court focused its attention almost entirely on the act of copying, not the act of distribution prohibited by § 106(3) as applied to importation by § 602(a). When the district court finally addressed § 602(a) towards the end of its second decision, it concluded that such a claim must be specifically and separately pled. (ROA.578). The district court cited no support for this new copyright infringement pleading rule, and TGS offers none either, effectively conceding the point.

The district court never granted leave to GSI to amend this claim as TGS asserts.  Rather, in its first decision, subsequently vacated, it dismissed GSI's direct infringement claim with prejudice, and granted leave to amend only with respect to

GSI's claims alleged upon information and belief regarding what TGS did with

GSI's seismic works once they got their hands on them.

> The claims based on TGS's requests to the Petroleum Board to
> send copies of Geophysical's 1982 seismic lines to TGS's
> office in the United States are dismissed with prejudice and
> without leave to amend. The claims based on TGS's copying
> and distribution of Geophysical's seismic lines and TGS's use
> of those lines to decide where to conduct the surveys it used to
> generate the OB-102, OB-107, and NE Newfoundland Flemish
> Pass seismic lines are dismissed, without prejudice and with
> leave to amend.

(ROA.382). GSI did not amend because without discovery it could not file an

amended complaint that would satisfy the district court's requirements.

(ROA.394). However, if the district court had allowed GSI to amend its direct

infringement claim based upon importation it certainly would have, but the district

court refused to allow it.

## A.    TGS's futility argument is wrong because *Kirtsaeng* held that "lawfully made under this title" imposes a non-geographical limitation, and therefore means "in accordance with" or "in compliance with" the U.S. Copyright Act.

TGS now pins its hopes on the first sale doctrine in 17 U.S.C. § 109(a), a

point TGS never argued in its motion to dismiss.[1]  However, the district court's

decision based upon the first sale doctrine was error because GSI's complaint

---

[1] TGS first argued the point in a reply, but there it did not use the buzz word "first sale" by name or even cite to § 109. (ROA.264). GSI did not use the buzz word "importation" in its complaint, and now TGS seeks to punish GSI for that omission even though the facts in the complaint supported a direct infringement claim based upon it.  GSI submits that if TGS's omission to use the term "fist sale" is excused, so too should GSI's omission of "importation."

sufficiently and plainly alleges that the copies of its seismic works imported by TGS were not lawfully made. (ROA.16-18). TGS's response impermissibly relies upon Canadian legal authorities outside the complaint in defense of the district court's substantive determination of Canadian law on a Fed. R. Civ. P. Rule 12(b)(6) motion.

The problem is that it is the United States Copyright Act of 1976, not Canadian law, that matters here, and under Title 17 of the U.S. Code the copies of GSI's seismic works imported by TGS were not "lawfully made." *Kirtsaeng v. John Wiley & Sons, Inc*., 133 S. Ct. 1351, 1358 (2013).

TGS is not entitled to a first sale defense because the copies that TGS imported were not "lawfully made" under the U.S. Copyright Act. The Supreme Court's decision in *Kirstaeng* does not rescue TGS here. [2]  *Kirtsaeng* requires a non-geographical reading of "lawfully made" and supports GSI.

The Supreme Court in *Kirtsaeng* held that the words in § 109(a) "lawfully made under this title" impose a non-geographical limitation and mean "in accordance with" or "in compliance with" the U.S. Copyright Act. *Id*., 133 S. Ct. at 1358.  Therefore, in order for TGS to be entitled to a first sale defense to GSI's

---

[2] GSI's brief at page 24 inadvertently reversed the parties in *Kirtsaeng* when GSI recounted their arguments at the Supreme Court.  Supap Kirtsaeng's non-geographic argument that "lawfully made under this title" means "lawfully made under the U.S. Copyright Act," was the prevailing argument in *Kirtsaeng*, not Wiley's geographic argument that relied upon the foreign copyright act where the copies were made.

claims of infringement for violating its importation right, the copies of GSI's

seismic works that TGS imported must have been lawfully made under U.S.

Copyright law.

*Kirstaeng* anticipated the scenario in this case when it rejected the argument

that its decision in *Kirtsaeng* rendered its prior decision in *Quality King Distribs. v.*

*L'Anza Research Int'l*, 523 U.S. 135 (1998) superfluous.

> We do not believe that this argument is a strong one. Under
> Quality King's interpretation, §602(a)(1) would still forbid
> importing (without permission, and subject to the exceptions in
> §602(a)(3)) copies lawfully made abroad, for example, where
> (1) a foreign publisher operating as the licensee of an American
> publisher prints copies of a book overseas but, prior to any
> authorized sale, seeks to send them to the United States; *(2) a*
> *foreign printer or other manufacturer (if not the "owner" for*
> *purposes of §109(a), e.g., before an authorized sale) sought to*
> *send copyrighted goods to the United States;* (3) "a book
> publisher transports copies to a wholesaler" and the wholesaler
> (not yet the owner) sends them to the United States, see
> Copyright Law Revision, pt. 4, at 211 (giving this example); or
> (4) a foreign film distributor, having leased films for
> distribution, or any other licensee, consignee, or bailee sought
> to send them to the United States. See, e.g., 2 Nimmer on
> Copyright §8.12[B][1][a], at 8-159 ("Section 109(a) provides
> that the distribution right may be exercised solely with respect
> to the initial disposition of copies of a work, not to prevent  or
> restrict the resale or other further transfer of possession of such
> copies"). These examples show that §602(a)(1) retains
> significance. We concede it has less significance than the
> dissent believes appropriate, but the dissent also adopts a
> construction of §106(3) that "significantly curtails" §109(a)s
> effect, post, at ___, 185 L. Ed. 2d, at 434, and so limits the
> scope of that provision to a similar, or even greater, degree.

*Kirtsaeng*, 133 S. Ct. at 1368 (emphasis added). The example in number (2) emphasized above is essentially GSI's case. Before TGS requested disclosure of GSI's seismic lines from the Petroleum Board there had been no authorized sale of those lines. TGS made its request and the Petroleum Board sent GSI's seismic lines to a local print shop in Canada to be copied and then shipped to TGS in Houston. Once again, no authorized sale occurred, but distribution of copies without GSI's consent did occur and crossed the border into the U.S. That importation violated § 602(a) but § 109 offers no defense.

**B.      Justice Eidsvik's creation of a "compulsory license" under Canadian law is inconsistent with the U.S. Copyright Act and therefore the first sale doctrine does not apply.**

Even assuming a first sale defense could be asserted by TGS, the ultimate determination whether or not the defense succeeds is a determination that cannot be made based upon a review of GSI's complaint alone on a motion to dismiss.[3] Construing the complaint in the light most favorable to GSI, GSI alleges that the

---

[3] It bears noting that *Kirtsaeng* was decided on summary judgment, not a motion to dismiss like this case. The district court's determinations of foreign law here, just like TGS's arguments based upon Canadian law, involved fact finding based upon matters "outside the pleadings" presented to the district court, none of which could be considered without converting the motion to a summary judgment. Fed. R. Civ. P. Rule 12(d)("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to . . . the court, the motion must be treated as one for summary judgment under Rule 56."). There is no "first sale" defense apparent on the face of GSI's complaint. The only way to rule on the "first sale" defense would be to consider the facts, and even if those facts are considered and applied according to *Kirtsaeng*, TGS's defense evaporates.

importation by TGS of GSI's seismic works, even if they were disclosed and copied pursuant to the "compulsory licensing system" created by the decision of Justice Eidsvik's of the Court of Queens' Bench of Alberta[4] (TGS Adden. Ex. 5), are not entitled to the first sale defense and their distribution by importation is prohibited by 17 U.S.C. § 602(a).

Justice Eidsvik determined two things. First, she determined that GSI's seismic works are entitled to copyright protection under Canada's Copyright Act. (TGS Adden. Ex. 5 at 28 ¶115). Second, she determined that the Canadian "Regulatory Regime created a compulsory licensing system through which the Boards have the authority to copy, and as a result they are not infringing the [Canadian] Copyright Act when they do so." (TGS Adden. Ex. 5 at 60-61 ¶318).

Justice Eidsvik's conclusion that the Regulatory Regime created a "compulsory licensing system" has the effect of immunizing Canadian petroleum boards, including the CNLOPB at issue in this case, from liability for copyright infringement under Canadian law. That conclusion, however, does not change the outcome in this case. As noted above, the defense of first sale depends not on whether the copies were made in accordance with the law of Canada, but whether the copies were authorized under the U.S. Copyright Act and here they were not.

---

[4] The Addendum to the Brief of Appellee will be cited as "TGS Adden." and the documents under numbered tabs as "Ex. #."

*Nimmer on Copyright* contains several illustrative scenarios that, under the *Kirtsaeng* decision, would not be entitled to a defense under § 109(a).  One example involves the importation of phonorecords from New Zealand "recorded in New Zealand pursuant to that nation's equivalent to the mechanical compulsory license." 2-8 *Nimmer on Copyright* § 8.13[B][3][c][v][I] (2015).  Nimmer observes that the compulsory licensing scheme in New Zealand is not in accord with the compulsory licensing scheme under U.S. law, and therefore the importer of phonorecords manufactured under New Zealand's compulsory license would not be entitled to the first sale defense.

> Other nations embody different compulsory licenses into their domestic copyright laws that find no counterpart in Title 17. A whole host of copies, therefore, could be lawfully made in their place of manufacture under local copyright law, but nonetheless equally fall out of compliance with Title 17, had Title 17 been applicable there. All of these goods, accordingly, fall equally outside the protection of *Kirtsaeng's* ruling.

2-8 *Nimmer on Copyright* § 8.13[B][3][c][v][I] (2015).

*Nimmer's* New Zealand scenario anticipates GSI's case.  Justice Eidsvik's decision recognized a "compulsory license" that GSI granted for free without its knowledge and against its will by implication without any specific legislative authorization.[5]  As Justice Eidsvik noted:

---

[5] GSI believes that Justice Eidsvik's "compulsory license" cannot be reconciled with U.S. Copyright Law.

> [317] It is also clear that GSI fought against this disclosure
> policy for years (and obviously is still fighting). To suggest that
> it has "consented" to the disclosure of its very valuable seismic
> data, impliedly or not, does not sit well with me. In my view,
> GSI has been forced to grant, in effect, a compulsory licence to
> permit its offshore seismic data to be released and used by the
> public. The Regulatory Regime provides for this, as discussed
> above. GSI may not have liked to do so, it certainly never
> "consented" and it may be unfair, but it is the Regulatory
> Regime approved by Parliament.

(TGS Adden. Ex. 5 at 60 ¶317). A license, compulsory or otherwise, imposed upon

these terms is inconsistent with Title 17 of the U.S. Code. The compulsory license

created by Justice Eidsvik is not "in accordance with" or "in compliance with" the

U.S. Copyright Act, and no such provision, compulsory or otherwise, exists.

---

First, compulsory licenses are creatures of statute, not judicial fiat. For example, in enacting 17 U.S.C. § 115 Congress determined that any person could obtain a compulsory license from the U.S. Copyright Office to make and distribute copies of phonorecords of nondramatic musical works simply by giving the copyright owner notice of his intention to do so. 17 U.S.C. § 115(a)-(b). In exchange, the copyright owner is entitled to royalties each month at a statutory rate, plus a monthly statement of accounts, for every phonorecord made and distributed by the licensee. *Id.* § 115(c).

Second, compulsory licenses are still licenses and licenses are bought and paid for by licensees, not handed out for free as with Justice Eidsvik's creation.

Furthermore, Justice Eidsvik's "compulsory license" would likely violate the "three-step test" contained in Article 13 of the Agreement on Trade-Related Aspects of Intellectual Property Rights (TRIPS), which provides "Members shall confine limitations or exceptions to exclusive rights to [1] certain special cases [2] which do not conflict with a normal exploitation of the work and [3] do not unreasonably prejudice the legitimate interests of the right holder." Agreement on Trade-Related Aspects of Intellectual Property Rights, Art. 13 (Annex 1C of the Marrakesh Agreement Establishing the World Trade Organization) accessible at https://www.wto.org/english/tratop_e/trips_e/t_agm0_e.htm. Justice Eidsvik's free compulsory license arguably fails steps 2 and 3 of the three-step test. It fails step 2 because normal exploitation of GSI's seismic works is by paid licenses, whereas Justice Eidsvik's free compulsory license permits every GSI licensee access to its works for free. It fails step 3 in all the ways that GSI has been prejudiced as described in its Statement of the Case set forth in its Brief.

TGS makes no arguments to the contrary. Instead, TGS falls back on the district court's justification in its first decision, subsequently vacated, that the Canadian legislative scheme created an "implied license" to copy GSI's works, and that any copies made pursuant to this "implied license" could be imported by TGS without violating GSI's importation rights under § 602(a) because an actual "sale" of the imported copy is not required for the "first sale" doctrine to apply.

TGS's implied license argument is not a proper basis for granting a Rule 12(b)(6) motion. Implied license is an affirmative defense on which TGS has the burden of proof, and a factual determination that GSI impliedly consented to the making of the copies that TGS imported (which is false) cannot be made based upon the four corners of GSI's complaint alone. After a three week trial and mountains of evidence regarding's GSI's decades long fight against the release of its seismic works, Justice Eidsvik ultimately determined that the implied license argument was untenable. (TGS Adden. Ex. 5 at 60 ¶317). TGS cannot have it both ways. TGS cannot pick and choose only the favorable parts of the Canadian decision.

## C.      The act-of-state doctrine does not apply.

Upholding GSI's importation rights under § 602(a) did not require the district court to decide Canadian law. TGS offers no plausible reasons why the district court was required to determine Canadian law in order to decide whether

the copies of GSI's seismic imported by TGS were lawfully made in Canada in the first instance.  As noted above, *Kirtsaeng* requires TGS to demonstrate that the copies of GSI's works it imported were lawfully made under Title 17 of the U.S. Code, not the laws of Canada.

TGS's brief confuses the issues on numerous levels.  As GSI has noted again and again, nowhere in the complaint does GSI allege that the Petroleum Board did anything unlawful.  The complaint alleges that TGS infringed, not CNLOPB. The complaint, citing to the ATIA response attached, alleges that "TGSN solicited NLOPB to copy and distribute to TGSN copies of the GSI Works." (ROA.16). The ATIA response reflects that the Petroleum Board sent GSI's seismic works out to a local printer in Canada[6] for copying and shipment to TGS in Houston. (ROA.22). In other words, the Petroleum Board released the copies of GSI's works in its possession to a copy service.  Whether or not the release of GSI's works by the Petroleum Board was lawful under Canadian Law does not need to be decided in order for the district court to determine whether TGS's importation of GSI's works was lawful under U.S. law.  TGS provides no justification to the contrary.

---

[6] Exhibit A to the Complaint identifies the print shop as "Sharpe Images." (ROA.22).

## II.     GSI'S COMPLAINT STATES A CLAIM FOR CONTRIBUTORY COPYRIGHT INFRINGEMENT AND THIS CLAIM IS NOT ENTIRELY EXTRATERRITORIAL.

GSI's direct copyright infringement claim is based upon TGS's violation of GSI's distribution right under § 106(3) as applied to importation under § 602(a). GSI's contributory infringement claim was pled in the alternative.

Holding TGS liable for contributory infringement would require a finding that the Petroleum Board directly infringed by violating one of GSI's exclusive rights under 17 U.S.C. § 106, and that TGS induced or encouraged the infringement by the Petroleum Board. See *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005).

GSI's contributory infringement claim is predicated upon the Petroleum Board's "cop[ing] and distribut[ion of] the GSI Works to TGSN without GSI's authorization in violation of 17 U.S.C. § 501." (ROA.19).  TGS's arguments are all based upon Canadian law, and are legally irrelevant.

The law in Canada is unsettled.  Today, Justice Eidsvick's decision may be the law, but GSI has appealed Justice Eidsvik's decision, and whether or not the "compulsory licensing system" described therein will survive appeal is unknown. But, for the same reason that it was error for the district court to go outside the complaint to determine the sufficiency of GSI's direct infringement claim by

interpreting foreign law, so too was it error for the district court to do so regarding GSI's contributory infringement claim.

TGS's extraterritoriality argument fails because the direct infringement at issue was not entirely extraterritorial. The Petroleum Board gave GSI's seismic works to a local print shop for copying in order so that the copies could be shipped from Canada to TGS in Houston. TGS fails consider or even address these facts.

> [T]he finding of an "act" of infringement in one jurisdiction may constitute the basis for a finding that another and subsequent "act" in another jurisdiction constitutes copyright infringement. For example, if it is found that defendant's song was copied in England from plaintiff's song, it may follow that the public performance of defendant's song in the United States infringes plaintiff's American copyright…if copyright infringement does occur within the United States, plaintiff may be entitled to recover defendant's profits accruing from exploitation of the work anywhere in the world.

5-17 *Nimmer on Copyright* § 17.02 (2015). See also, *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 307 (4th Cir. 2012)(held: a copyright owner can collect damages for foreign violations of its exclusive rights that are linked to domestic infringement).

Simply arguing that the Copyright Act does not apply extraterritorially does not decide the point. A factual determination is necessary.

### III.   THE DISTRICT COURT'S ATTORNEYS' FEE AWARD SHOULD BE REVERSED.

**A.   *Hogan's* directive to award fees routinely conflicts with *Fogerty's* instruction that prevailing plaintiffs and defendants should be treated alike.**

None of the post-*Hogan* cases cited by TGS addressed the question raised by GSI here, namely whether this Court's determination in *Hogan Sys., Inc. v. Cybresource Int'l, Inc.*, 158 F.3d 319, 325 (5th Cir. 1998) that attorneys' fees awards to prevailing parties in copyright cases is "are the rule rather than the exception and should be awarded routinely" conflicts with *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994).

*Hogan* was the last case to consider the application of *Fogerty* in this Circuit.[7] *Hogan* said the Fifth Circuit's rule, first announced in *McGaughey v. Twentieth Century Fox Television*, 12 F.3d 62, 65 (5th Cir. 1994), was consistent with *Fogerty* because "[t]he language of *Fogerty* clearly allows for judicial discretion in determining whether attorney's fees should be awarded." *Hogan*, 158 F.3d at 325.

*Fogerty*'s requirement that "[p]revailing plaintiffs and prevailing defendants are to be treated alike" when it comes to awarding attorneys' fees is impossible to

---

[7] TGS cites *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 588-89 (5th Cir. 2015) and *Virgin Records Am., Inc. v. Thompson*, 512 F.3d 724 (5th Cir. 2008).  However, these cases simply repeat the rule announced in *Hogan* without examining whether or not it is consistent with the rule in *Fogerty*.

reconcile with Hogan's directive that attorneys' fees "are the rule rather than the exception and should be awarded routinely." A rule that is discretionary cannot be routine. Each case is different. Each case requires the exercise of discretion.[8]

### B. The district court failed to correctly apply the Fogerty factors and abused its discretion.

The district court's first mistake was considering the frivolousness factor together with the objective unreasonableness factor. (ROA.726). *Fogerty* delineates frivolousness and objective unreasonableness as *separate factors*, to wit "[1] frivolousness, [2] motivation, [3] objective unreasonableness (both in the factual and in the legal components of the case) and [4] the need in particular circumstances to advance consideration of compensation and deterrence . . . so long as such factors are faithful to the purposes of the Copyright Act and are applied to prevailing plaintiffs and defendants in an evenhanded manner." *Fogerty*, 510 U.S. at 534 n.19. Combining these factors together, the district court arrived at the tenuous conclusion that GSI's infringement claims were *not frivolous*, but that

---

[8] The Supreme Court heard oral argument on April 25, 2016 in the second appeal of *Kirtsaeng* where the question presented concerns whether the application of *Fogerty* by the Second Circuit violated 17 U.S.C. § 505. *John Wiley & Sons, Inc. v. Kirtsaeng*, 605 F. App'x 48 (2d Cir. 2015). The Second Circuit does not apply a presumption that fees should be routinely awarded. Futhermore, in the Second Circuit district courts are not bound by any precise rule or formula, except that substantial weight is to be given to the objective reasonableness factor. *Matthew Bender & Co. v. W. Pub'g Co.*, 240 F.3d 116, 122 (2d Cir. 2001). A decision in the second *Kirtsaeng* appeal is expected this term.

the absence of unspecified "factual support" weighed in favor of an objective unreasonableness determination. (ROA.727-8).

The district court's conclusion that GSI's claim lacked factual support was based upon its incorrect reading of GSI's complaint. The district court believed, erroneously, that GSI's direct infringement claim was premised entirely upon what TGS did with GSI's works once they were imported, and not what GSI's claim actually alleged which was that TGS violated GSI's distribution right under 17 U.S.C. § 106(3), as applied to importation by 17 U.S.C. § 602(a), when it imported copies of GSI's seismic works from Canada to Houston, Texas.

TGS repeats the district court's mistake, and takes it further by pointing to GSI's failure to amend the complaint when the district court granted GSI leave to do so. However, the district court's grant of leave related solely to the claim that the district court incorrectly thought GSI was asserting that related to what TGS did with GSI's works after importation, and not GSI's actual claim in the complaint that TGS infringed by importing GSI's works without its permission. The later claim was always one asserted based upon information and belief, and could only succeed if TGS's importation of GSI's works was infringing in the first instance. Yet TGS wants GSI punished for claims GSI never made. Awarding fees based upon claims that GSI never made must be an abuse of discretion if ever there was one.

TGS correctly notes, citing *Viva Video, Inc. v. Cabrera*, 9 F. App'x. 77, 80 (2d Cir. 2001), that an objectively unreasonable claim has "no legal or factual support." *Id.* However, the district court never found a total lack of legal support for GSI's claims. Nor did the district court fail to find a total absence of factual support, even assuming *arguendo* it understood them correctly. Instead, the district court improperly relied upon the strength of TGS's defenses, not the strength of GSI's case, which it misunderstood in any event. Instead of finding a lack of legal support, the district court justified its fee award by citing to its first decision that it subsequently vacated rendering it void *ab initio*. These conclusions were all an abuse of discretion.

TGS's attempt to take credit for "promoting access to seismic data" is particularly bizarre. TGS did nothing to promote access to seismic data. TGS got access to GSI's seismic data because the Canadian parliament passed laws, the provincial government of Newfoundland and Labrador passed more laws and made regulations, and the Petroleum Board collected GSI's seismic works and then gave them out for free to any of GSI's customers and competitors who requested them.

TGS is GSI's competitor. If a customer of TGS who had access to TGS's valuable seismic data were to use TGS's valuable intellectual property in a manner that violated TGS's rights, would TGS allow such a violation in the name of "promoting access to seismic data?" GSI thinks not. See, e.g., *In re Virgin*

*Offshore USA, Inc.*, No. 13-79, 2013 U.S. Dist. LEXIS 128995 (E.D. La. Sep. 10, 2013)(Held: Chapter 11 debtor properly assumed license for seismic data with TGS, and TGS's claim that copyright law and non-assignment clause in TGS's seismic data license precluded Trustee's assumption under 11 U.S.C. § 365 were rejected).

A rule that awards attorneys' fees routinely leads to absurd results like the one in this case.  GSI submits that the only way a district court can justify a fee award when faced with conflicting determinations such as this is by resort to a rule that says attorneys' fees "are the rule rather than the exception and should be awarded routinely."  GSI also submits that even if *Hogan* stands, the district court abused its discretion.

Finally, for the same reasons that the district court abused its discretion in awarding fees to TGS, this Court should decline to do so.

## CONCLUSION

For all the foregoing reasons, the district court's judgment dismissing the complaint, and its order awarding fees and costs, should be reversed, and this case remanded for further proceedings. If this court affirms the district court's judgment of dismissal, it should vacate the order awarding attorneys' fees and costs to TGS.

DATED: May 20, 2016

Respectfully submitted,

*/s/ Joel B. Rothman*
JOEL B. ROTHMAN
Joel.rothman@sriplaw.com
**SCHNEIDER ROTHMAN INTELLECTUAL
PROPERTY LAW GROUP, PLLC**
4651 North Federal Highway
Boca Raton, FL  33431
561.404.4350 – Telephone
561.404.4353 – Facsimile

Matthew J.M. Prebeg
mprebeg@PFALAWFIRM.COM
Brent Caldwell
bcaldwell@PFALAWFIRM.COM
**PREBEG FAUCETT & ABBOTT, PLLC**
8441 Gulf Freeway, Suite 307
Houston, TX 77017

*Counsel for Appellant Geophysical Service,
Incorporated*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 20th day of May, 2016, I caused this Reply Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Melanie B. Rother
> Peter C. Tipps
> NORTON ROSE FULBRIGHT US, L.L.P.
> 1301 McKinney Street, Suite 5100
> Houston, Texas  77010
> (713) 651-5560
>
> *Counsel for Appellee*

Upon acceptance by the Clerk of the Court of the electronically filed document, the required number of bound copies of the Reply Brief of Appellant will be filed with the Clerk of the Court via UPS Next Day Air.

*/s/ Joel B. Rothman*
*Counsel for Appellant*

# CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*4,668*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: May 20, 2016                              */s/ Joel B. Rothman*
                                                 *Counsel for Appellant*