# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 15-20706

United States Court of Appeals
Fifth Circuit
**FILED**
March 10, 2017
Lyle W. Cayce
Clerk

GEOPHYSICAL SERVICE, INCORPORATED,

Plaintiff - Appellant

v.

TGS-NOPEC GEOPHYSICAL COMPANY,

Defendant - Appellee

Appeals from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, ELROD, and HIGGINSON, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Canada has a law that requires companies who gather seismic data about the Earth's substructure to submit their findings to the Canadian government. After a period of confidentiality, the Canadian agency that compiles this data is then apparently permitted to release it to members of the public upon specific request. In this case, a Houston company requested seismic data from this Canadian agency pursuant to that law, and the Canadian agency sent copies of a particular Canadian company's seismic data to the United States. The Canadian company then sued the Houston company, alleging copyright infringement.

We are called upon to determine whether the act of state doctrine forbids a United States court from considering the applicability of copyright's first sale doctrine to foreign-made copies when the foreign copier was a government agency. We hold that it does not. We must also decide whether the inapplicability of the Copyright Act to extraterritorial conduct bars a contributory infringement claim based on the domestic authorization of entirely extraterritorial conduct. We hold that it does. Accordingly, we affirm in part, reverse in part, vacate in part, and remand.

**I.**

The parties compete in the seismic data industry, using off-shore technological equipment to bounce sound waves off the ocean floor. The reflected sound waves bring information about the rock layers beneath the earth's crust, information nigh useless until geophysicists digitally create "seismic lines," paper copies of which are known as "seismic sections." A seismic line is a cross section of the area surveyed that incorporates professional interpretation of the information gathered and puts it into a useful format. The result is a copyright-protected geological "picture" of the subterranean structure in the area surveyed, useful to the oil and gas industry in locating hydrocarbons. These pictures are often licensed to oil and gas explorers.

Plaintiff-Appellant Geophysical Service, Inc. ("Geophysical") is a Canadian corporation based in Calgary, operating under Canadian law. The Canada-Newfoundland and Labrador Offshore Petroleum Board ("CNLOP Board"), established by Canadian legislation, regulates energy exploration to ensure worker safety, environmental protection and safety, effective management of land, maximum hydrocarbon recovery and value, and benefits to the government. Under Canadian law and the regulations of the CNLOP Board, companies are required to provide the CNLOP Board with a copy of

each seismic line they create, and the Board is required to keep these submissions confidential for ten years.[1] Geophysical provided copies of its seismic lines to the Board.

In 1999, Defendant-Appellee TGS-NOPEC Geophysical Co. ("TGS") e-mailed the CNLOP Board to request copies of thirty-three of Geophysical's old seismic lines. Pursuant to that request, and apparently acting under the authority of the Canadian legislation that established it,[2] the CNLOP Board directed a private copy service in Canada to prepare copies of Geophysical's old seismic lines and send them by courier to TGS in Houston. The Board billed TGS $97.75 in shipping and handling costs. Geophysical discovered this transaction years later, in 2013.

With the requested copies of Geophysical's seismic lines in hand, TGS performed its own seismic surveys in the same locations surveyed by Geophysical and captured in its seismic lines. Geophysical also alleges that TGS prepared additional copies of Geophysical's seismic lines, distributed them to third parties, removed their copyright management information, and prepared derivative works from them.

Learning that the CNLOP Board had furnished the seismic lines, Geophysical filed this suit in the Southern District of Texas. Its complaint alleged that it held a valid copyright in its seismic lines and that TGS committed direct copyright infringement, committed contributory copyright infringement, and unlawfully removed Geophysical's copyright management information from its works. TGS filed a motion under Rule 12(b)(6) to dismiss the complaint, or alternatively, to abstain. The district court first ruled that

[1] The parties dispute what the Board is lawfully permitted to do after this ten-year period. We offer no view on this dispute.

[2] Geophysical challenged this regulatory regime in Canada. A Canadian appeals court is currently hearing the case.

the CNLOP Board had an implied license to create copies of Geophysical's seismic lines, so TGS's importation of them was protected by the first sale doctrine, and that any other claims were insufficiently pled, but that Geophysical could amend its complaint to add sufficient allegations. Geophysical did not amend, but instead moved for reconsideration of the district court's initial order, which the court granted. Its new order is the subject of this appeal.

In its final judgment, the district court ruled that Geophysical failed to state a claim for direct infringement or removal of copyright management information because its allegations in support of those claims were speculative and conclusory. It further ruled that Geophysical could not maintain a claim for contributory infringement because the direct infringement upon which that claim was predicated occurred extraterritorially, and alternatively, because the act of state doctrine forbade the court from passing on the legality of the CNLOP Board's actions. Finally, the district court ruled that to the extent Geophysical claimed importation of infringing material, that claim was barred because the act of state doctrine and "extraterritoriality principles" required the court to find that the copies were lawfully made.

The district court then dismissed Geophysical's complaint with prejudice and awarded TGS its attorneys' fees and costs upon TGS's motion. Geophysical timely appealed both the dismissal and fee award.

**II.**

**1.**

"We review a district court's grant of a motion to dismiss *de novo*."[3] We review whether a district court applied the correct legal standard for attorneys'

[3] *Boyd v. Driver*, 579 F.3d 513, 515 (5th Cir. 2009).

fees *de novo*.[4] We review a district court's ultimate award of attorneys' fees for abuse of discretion.[5]

**2.**

Turning first to our jurisdiction, as we must,[6] we see only one jurisdictional issue: TGS's contention that, as Geophysical did not allege domestic copyright infringement, its claims are beyond the territorial reach of the Copyright Act.[7] Some cases treat the territorial reach of the Copyright Act as an issue of jurisdiction,[8] so we turn first to this question.[9]

We are persuaded that the Copyright Act's insistence that infringing conduct be domestic offers an essential element of a copyright infringement plaintiff's claim, not of jurisdiction. As *Arbaugh v. Y&H Corp.*[10] explained:

> If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. . . . But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.[11]

---

[4] *Hogan Sys., Inc. v. Cybresource Int'l, Inc.*, 158 F.3d 319, 325 (5th Cir. 1998), *overturned on other grounds by Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979 (2016).

[5] *Id.*

[6] *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level.") (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998)).

[7] *See Kirtsaeng v. John Wiley & Sons, Inc.*, 133 S. Ct. 1351, 1376 (2013) (Ginsburg, J., dissenting) ("The Copyright Act, it has been observed time and again, does not apply extraterritorially." (citing *United Dictionary Co. v. G. & C. Merriam Co.*, 208 U.S. 260, 264 (1908))); *see also Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1095-98 (9th Cir. 1994) (en banc).

[8] *See, e.g.*, *Peter Starr Prod. Co. v. Twin Cont'l Films, Inc.*, 783 F.2d 1440 (9th Cir. 1986); *Palmer v. Braun*, 376 F.3d 1254 (11th Cir. 2004); *Rundquist v. Vapiano SE*, 798 F. Supp. 2d 102 (D.D.C. 2011).

[9] *See Steel Co.*, 523 U.S. at 94 ("Without jurisdiction the court cannot proceed at all in any cause.") (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1868)).

[10] 546 U.S. 500 (2006).

[11] *Id.* at 515-16 (citations omitted).

The Copyright Act does not express its limit on territorial reach. That limit arises from the background presumption that legislation reaches only domestic conduct.[12] Because the domestic boundary is not "clearly state[d]" to "count as jurisdictional," we "treat the restriction as nonjurisdictional in character."[13]

Though the Court has never confronted the precise question before us, analogous cases applying *Arbaugh* confirm that the issue is not one of jurisdiction. Section 10(b) of the Securities Exchange Act's implicit requirement of domestic conduct is nonjurisdictional,[14] and a different threshold requirement of the Copyright Act is nonjurisdictional.[15] We are persuaded that bounding the reach of the Copyright Act to territorial conduct presents a question of the merits of the claim, not the jurisdiction of the court.[16]

## III.

### 1.

A claim of copyright infringement has two elements: (1) ownership of a valid copyright; and (2) copying constituent elements of the work that are copyrightable.[17] This appeal concerns the second element.

Geophysical advanced three claims in the district court: direct infringement, contributory infringement, and unlawful removal of copyright management information. Geophysical's direct infringement claim as presented to the district court consisted of two distinct components: first, that TGS unlawfully imported copies of Geophysical's seismic lines; second, that

---

[12] *See Subafilms*, 24 F.3d at 1095-96.

[13] *See Arbaugh*, 546 U.S. at 515-16.

[14] *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 253-54 (2010).

[15] *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010) (applying the *Arbaugh* test to conclude that the registration requirement in the Copyright Act was a "precondition to suit that supports nonjurisdictional treatment").

[16] *Accord Litecubes, LLC v. N. Light Prods., Inc.*, 523 F.3d 1353, 1368 (Fed. Cir. 2008).

[17] *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 576 (5th Cir. 2003).

TGS thereafter prepared additional copies, prepared derivative copies, and distributed those copies to the public.

However, Geophysical's briefing on appeal shifts ground, focusing entirely on the importation component of its direct infringement claim and its contributory infringement claim. "An appellant abandons all issues not raised and argued in its initial brief on appeal."[18] To the extent that Geophysical's claim of direct infringement was based on alleged actions taken by TGS after receiving the imported copies, it now abandons those allegations on appeal, as well as any claim of unlawful removal of copyright management information. Dismissal of those aspects of Geophysical's claims is not before us.

**2.**

Two claims remain: direct infringement by importation and contributory infringement.

*A. Direct Infringement by Importation*

The district court dismissed Geophysical's claim of unlawful importation on two independent grounds. First, it found that Geophysical had failed to plead unlawful importation in its complaint. Second, it found that amendment was futile: Geophysical's unlawful importation claim would be barred because the act of state doctrine and "extraterritoriality principles" required the court to find that the copies made by the CNLOP Board were "lawfully made" within the meaning of the first sale doctrine.

*1. Failure to Plead*

We are not persuaded that Geophysical failed to plead a claim for unlawful importation. Under § 602 of the Copyright Act, importation into the United States of copyrighted work without the copyright holder's permission is actionable as infringement of the copyright holder's exclusive right to

[18] *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) (emphasis removed).

distribute.[19] Unauthorized importation of copyrighted work is a statutorily established method of demonstrating infringement of one of the exclusive rights afforded by § 106 of the Copyright Act and is not itself a separate claim that must be separately pleaded.[20]

Geophysical's complaint pleads that TGS imported copies of its copyrighted seismic lines:

> [O]n March 29, 1999, TGSN solicited CNLOPB to copy and distribute to TGSN copies of the . . . Works. . . . [O]n or about April 9, 1999, CNLOPB copied and distributed the . . . Works to TGSN by courier to TGSN in Houston, Texas.

It further alleges, under the heading "Direct Copyright Infringement," violation of Geophysical's exclusive right to distribute. The complaint did not state that "unauthorized importation" or some variant partially formed the basis of Geophysical's direct infringement claim, but its substance was sufficient, and we turn to the merits of Geophysical's direct infringement claim alleging unlawful importation.

*2. Merits*

On the merits of Geophysical's importation claim, TGS defended on the basis that its importation of copies of Geophysical's seismic lines was protected by the first sale doctrine because the copies were "lawfully made." TGS offered

---

[19] 17 U.S.C. § 602(a)(1) ("Importation into the United States, without the authority of the owner of copyright under this title, of copies or phonorecords of a work that have been acquired outside the United States is an infringement of the exclusive right to distribute copies or phonorecords under section 106, actionable under section 501."); *Quality King Distribs., Inc. v. L'anza Research Int'l, Inc.*, 523 U.S. 135, 145 (1998) ("[Section] 602(a) merely provides that unauthorized importation is an infringement of an exclusive right 'under section 106.'").

[20] *Cf. Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 620 (S.D.N.Y. 2013) ("[T]he plain language of the statute makes clear that an exportation of a copyrighted work without the permission of the copyright owner is merely a type of copyright infringement, rather than a separate cause of action. Thus, . . . the unauthorized import or export of copies under § 602 are simply additional examples of infringement under § 106.").

the district court several alternative bases by which to find that the copies it imported were lawfully made: (1) because the act of state doctrine required the court to deem the actions of the CNLOP Board lawful; (2) because Canadian law authorized the CNLOP Board to make the copies; and (3) because Geophysical had granted the CNLOP Board an implied license to create copies of its works, making their creation "lawful" under United States copyright principles. In finding that amendment would be futile, the district court was persuaded by the act of state argument. It ruled that Geophysical's claim of unlawful importation would be barred by the first sale doctrine because the act of state doctrine required it to find "lawful" the actions of the CNLOP Board, a Canadian government agency. It did not reach the question of whether Canadian or United States law governed whether the copies were "lawfully made."

Ultimately, we disagree with the application of the act of state doctrine here, for reasons we will describe. But first, we turn to the principles of the first sale doctrine.

*i. First Sale Doctrine*

The Copyright Act vests in copyright holders several enumerated exclusive rights that they enjoy over their copyrighted works.[21] It is clear that one of those rights is the exclusive right "to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending."[22] But § 106 is equally clear that each of those exclusive rights is "[s]ubject to sections 107 through 122,"[23] which establish various limitations on the enumerated exclusive rights. Relevant here is § 109, which limits the copyright owner's exclusive right to distribute:

---

[21] 17 U.S.C. § 106.
[22] *Id.* § 106(3).
[23] *Id.* § 106.

> Notwithstanding the provisions of section 106(3), the owner of a particular copy or phonorecord lawfully made under this title, or any person authorized by such owner, is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy or phonorecord.[24]

This "first sale doctrine" found its way into United States copyright law long before it was codified as § 109 in the current Copyright Act in 1976.[25] It reflects the fundamental principle of copyright that ownership of the copyright in a work is distinct from ownership of the material object that embodies the work.[26] When a copyright owner transfers or authorizes transfer of a copy or phonorecord embodying his copyright, he does not surrender his copyright, but he does mostly surrender control of the material object.[27] The copyright owner will not be heard to complain of his transferee's transferring the material object in a way that might otherwise foul the exclusive right to distribute.

The doctrine of "first sale" is somewhat of a misnomer.[28] The limitation embodied in § 109 does not depend on whether the copyright owner's initial disposition was by sale; the only prerequisite is that the copy or phonorecord in question be "lawfully made."[29] Accordingly, nations elsewhere in the world with similar copyright regimes refer to the principle as the "exhaustion doctrine," reflecting the notion that the copyright owner "exhausts" his

---

[24] 17 U.S.C. § 109(a).

[25] 4 WILLIAM F. PATRY, PATRY ON COPYRIGHT § 13:18 (Sept. 2016 update).

[26] *Id.* § 13:15 (citing *Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 159 (3d Cir. 1984)); *see also* 17 U.S.C. § 202 ("Ownership of a copyright, or of any of the exclusive rights under a copyright, is distinct from ownership of any material object in which the work is embodied.").

[27] *See* 17 U.S.C. § 202.

[28] PATRY, *supra* note 25, at § 13:15.

[29] *Id.*; *UMG Recordings, Inc. v. Augusto*, 628 F.3d 1175, 1179 (9th Cir. 2011) ("Notwithstanding its distinctive name, the [first sale] doctrine applies not only when a copy is first sold, but when a copy is given away or title is otherwise transferred without the accouterments of a sale.").

distribution right in a copy or phonorecord upon first transfer of that copy or phonorecord.[30]

Section 109 by its plain terms limits only the exclusive right to distribute. The owner of a lawfully made copy or phonorecord is still forbidden from copying it, preparing derivative works based on it, publicly performing it, or publicly displaying it, any of which would violate one of the copyright owner's other exclusive rights (absent some other limitation or defense).[31]

Section 602 of the Copyright Act establishes that unauthorized importation into the United States of copies or phonorecords acquired outside the United States is infringement of the § 106(3) exclusive right to distribute.[32] Because this "importation right" is merely a corollary of the distribution right, it is similarly limited by the first sale doctrine.[33] Accordingly, importation into the United States of lawfully made copies or phonorecords, even where the copyright holder has not authorized such importation, is protected by § 109.

In *Kirtsaeng v. John Wiley & Sons, Inc.* [*Kirtsaeng I*],[34] the Supreme Court held that the first sale doctrine protects importers of lawfully made copies no matter where in the world those copies were made. In *Kirtsaeng I*, plaintiff Wiley published textbooks in the United States and authorized its wholly owned subsidiary, Wiley Asia, to manufacture and publish essentially identical textbooks in Thailand.[35] Defendant Kirtsaeng took advantage of the substantially lower prices for the Asian versions of the textbooks by having his friends and family purchase Wiley textbooks in Thailand, then ship them to

[30] PATRY, *supra* note 25, at § 13:15.
[31] *See* 17 U.S.C. § 106(1)-(2), (4)-(6).
[32] 17 U.S.C. § 602.
[33] *Quality King Distribs., Inc. v. L'anza Research Int'l, Inc.*, 523 U.S. 135, 144 (1998).
[34] 133 S. Ct. 1351 (2013).
[35] *Id.* at 1356.

him in the United States so that he could resell them for a profit at a lower price than the comparable American version.[36]

Wiley sued Kirtsaeng, alleging that his unauthorized importation of its textbooks amounted to infringement of Wiley's § 106(3) exclusive right to distribute by virtue of § 602's prohibition on unauthorized importation of copyrighted works.[37] Kirtsaeng defended by invoking the first sale doctrine, pointing out that the textbooks he acquired were "lawfully made" and that he acquired them legitimately, so he was permitted to import and resell the textbooks without the copyright owner's permission.[38] Wiley argued that the first sale doctrine protected only copies made in the United States or its territories, insisting that the phrase "lawfully made under this title" in § 109 imposed a geographic limitation restricting the lawful making of copies to places where the United States Copyright Act is the law.[39]

Wiley's view was shared at the time by the Second and Ninth Circuits.[40] That view was plausible because the Supreme Court case that originally had applied the first sale doctrine to importation claims had involved a situation where the copies were made in the United States, exported, and then subsequently reimported.[41] However, the Court in *Kirtsaeng I* declined to limit the application of the first sale doctrine to importation claims to those facts. Instead, it held that the first sale doctrine applies to copies of a copyrighted work lawfully made abroad.[42]

---

[36] *Id.*
[37] *Id.* at 1357.
[38] *Id.*
[39] *Id.* at 1357-58.
[40] *Id.* at 1357.
[41] *Quality King*, 523 U.S. at 138-39; *see Kirtsaeng I*, 133 S. Ct. at 1355.
[42] *Kirtsaeng I*, 133 S. Ct. at 1355-56.

The instant case implicates a question left open by *Kirtsaeng I*. Upon the Court's determination that "lawfully made under this title" could mean lawfully made anywhere, there was no argument to be made—and indeed Wiley did not argue—that the imported textbooks were *not* lawfully made. Wiley expressly assigned to Wiley Asia the rights to publish, print, and sell Wiley's textbooks in Thailand, so the imported textbooks were indisputably lawfully made.[43] Once the question of the geographic scope of § 109 was resolved, there was no question before the Court whether the creation of the Thai textbooks was lawful or unlawful, or whose law applied to make that determination. *Kirtsaeng I* therefore leaves open the difficult interpretive puzzle of what it means for a copy manufactured abroad to have been "lawfully made under this title" within the meaning of § 109.[44]

The facts of the instant case supply a good example of the puzzle: as in *Kirtsaeng I*, the copies imported into the United States here were manufactured abroad, but unlike in *Kirtsaeng I*, the parties dispute whether those copies were lawfully made. TGS would have us look to Canadian law to determine the lawfulness of the Board's making of the copies—it points to the fact that Canadian law appears to authorize the CNLOP Board to release copies of data submitted to it after ten years. Geophysical asks us instead to look to United States copyright principles—it points to the fact that the U.S. Copyright Act lacks a similar provision, so the CNLOP Board's making copies of Geophysical's works would have been unlawful had U.S. law applied. Applying foreign law seems to contradict the plain language of § 109, which asks whether copies were "lawfully made under *this* title," presumably referring to the title in which it appears, the Copyright Act. But applying

---

[43] *Id.* at 1356.

[44] 2-8 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 8.13[B][3][c][v] (2016).

United States law seems to foul the principle that the Copyright Act has no extraterritorial application, and creates some conceptual awkwardness where, like here, the foreign-made copies were made pursuant to some legal regime that finds no analog in United States law.

We decline to resolve this issue here, as the district court did not reach it, having found primarily that Geophysical failed to plead an importation claim, and alternatively, that the act of state doctrine required a finding of "lawfulness" regardless of whose law applied. The parties have yet to brief the proper interpretation of § 109—an issue that ought in the first instance be passed on by the able district court. We will remand for determination of the proper standard by which to assess whether imported copies made abroad were lawfully made under § 109 and application of that standard.

As mentioned, the district court did not need to engage this analysis because it found that the act of state doctrine mandated a finding that CNLOP Board's making of the copies was lawful. We turn now to that doctrine.

*ii. Act of State Doctrine*

This case presents yet another wrinkle: the foreign-made copies in question were created by a Canadian government agency. The district court accepted TGS's argument that, because the act of state doctrine bars United States courts from deciding that a foreign government acted unlawfully, the court was required to find the copies made by the CNLOP Board "lawfully made" within the meaning of § 109. We disagree.

The act of state doctrine "limits, for prudential rather than jurisdictional reasons, the adjudication in American courts of the validity of a foreign sovereign's public acts."[45] The doctrine applies to bar an action when "the relief

[45] *Walter Fuller Aircraft Sales, Inc. v. Republic of Phil.*, 965 F.2d 1375, 1387 (5th Cir. 1992).

sought or the defense interposed would have required a court in the United States to declare invalid the official act of a foreign sovereign performed within its own territory."[46] Though seemingly international in character, the doctrine is founded in concerns of domestic separation of powers, "reflecting the strong sense of the Judicial Branch that its engagement in the task of passing on the validity of foreign acts of state may hinder the conduct of foreign affairs."[47] "Act of state issues only arise when a court *must decide*—that is, when the outcome of the case turns upon—the effect of official action by a foreign sovereign."[48] It can apply "even if the defendant is a private party, not an instrumentality of a foreign state, and even if the suit is not based specifically on a sovereign act."[49]

We find that the question presented by the first sale doctrine, whether imported copies were "lawfully made," is different in kind from the question whether the copy-maker acted illegally or invalidly. Hence, the first sale question is outside the scope of the act of state doctrine even when the foreign copy-maker is a government agency. The Copyright Act, which does not apply extraterritorially, does not operate against the CNLOP Board in Canada. Evaluating the first sale defense in connection with TGS's importation of copies made by the Board does not decide whether the CNLOP Board is a copyright *infringer*, which *would* be a prohibited inquiry.

We find *United States v. Portrait of Wally*[50] persuasive. There, a New York district court ruled that the act of state doctrine did not forbid it from considering the rightful ownership of a portrait even though several steps in the chain of possession were questionable transfers to and from the Austrian

---

[46] *W.S. Kirkpatrick & Co., Inc. v. Envt'l Tectonics Corp., Int'l*, 493 U.S. 400, 405 (1990).
[47] *Id.* at 404 (internal quotations omitted).
[48] *Id.* at 406.
[49] *Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1113 (5th Cir. 1985).
[50] 663 F. Supp. 2d 232 (S.D.N.Y. 2009).

government.[51] That court held that it was "not being asked to *invalidate* any action by an Austrian governmental authority, but only to determine the effect of such action, if any, on [the portrait]'s ownership."[52] By analogy here, even a ruling in favor of Geophysical will not *invalidate* any action by the Canadian government, but only determine the effect of such action on the right of United States citizens to import copies that a Canadian agency made. Indeed, even if upon remand the district court finds that the copies were *not* "lawfully made under this title," that ruling only restricts TGS's (and others') ability to freely import the copies. Any determination will not speak to the *validity* of the Canadian government's actions, only whether those actions support lawful importation into the United States by a private party.

Further, the rationale behind the act of state doctrine does not support its application here.[53] We are unable to see—and TGS, which bears the burden,[54] makes no convincing argument—how passing on TGS's first sale defense will "imperil the amicable relations between governments and vex the peace of nations."[55] Finding that the act of state doctrine reaches a discrete, ministerial act like preparing the copies here is a reach too far.[56] In sum, disagreeing with the application here of the act of state doctrine, we must reverse the dismissal of Geophysical's importation claim.

---

[51] *Id.* at 247-48.

[52] *Id.* at 248.

[53] *See W.S. Kirkpatrick & Co.*, 493 U.S. at 409 ("[S]ometimes, even though the validity of the act of a foreign sovereign within its own territory is called into question, the policies underlying the act of state doctrine may not justify its application.").

[54] *Bigio v. Coca-Cola Co.*, 239 F.3d 440, 453 (2d Cir. 2000).

[55] *Jimenez v. Aristeguieta*, 311 F.2d 547, 558 (5th Cir. 1962) (quoting *Oetjen v. Cent. Leather Co.*, 246 U.S. 297, 304 (1918)).

[56] *Cf. Mannington Mills, Inc. v. Congoleum Corp.*, 595 F.2d 1287, 1294 (3d Cir. 1979) (grant of patents not the type of sovereign activity that would be of substantial concern to the executive branch in its conduct of international affairs).

*iii. Extraterritoriality*

The inapplicability of the United States Copyright Act to extraterritorial conduct provides no defense to Geophysical's importation claim. It is undisputed that TGS imported the copies of Geophysical's seismic lines into Houston, Texas by causing the CNLOP Board to send them there. Therefore, the act of importation occurred in the United States and is actionable under the Copyright Act depending on the resolution of TGS's first sale defense. To the extent the district court's dismissal of Geophysical's importation claim rested on "extraterritoriality principles," we disagree.

*3. Summary*

We reverse the district court's dismissal of Geophysical's direct infringement claim to the extent it alleged unauthorized importation, and remand that claim to the district court. Upon remand, the district court must first decide whose law governs the determination whether the copies imported by TGS were "lawfully made" under § 109. It must then apply the legal principles that it determines to govern. For example, if the district court finds that Canadian law controls the inquiry, then it may be helpful to await the input of the Canadian courts on Geophysical's challenge to the CNLOP Board's practice of making and releasing copies of seismic lines. Alternatively, if the district court finds that United States law controls, then it may revisit its initial inclination that Geophysical granted the CNLOP Board an implied license—though the creation of an implied license, which turns on the copyright holder's intent, is a fact question.

*B. Contributory Infringement*

Geophysical also asserted a claim of contributory infringement, seeking to hold TGS liable as a contributory infringer to the CNLOP Board's direct infringement in creating copies of Geophysical's seismic lines without Geophysical's permission. The district court ruled that both the territoriality

limit of the Copyright Act and the act of state doctrine independently barred this claim. We affirm on the basis of extraterritoriality.

Contributory infringement is "intentionally inducing or encouraging direct infringement."[57] The direct infringement that Geophysical alleges to support its contributory infringement claim is the CNLOP Board's creation of unauthorized copies of its seismic lines. This claim is subtly, but importantly, distinct from Geophysical's importation claim. Where Geophysical's importation claim, as we have discussed, seeks to impose liability on TGS for the act of unauthorized importation of unlawful copies, its contributory infringement claim seeks to impose liability on TGS for intentionally encouraging or inducing the CNLOP Board to create those copies regardless of what the CNLOP Board did with them thereafter. Unlike Geophysical's importation claim, its contributory infringement claim turns on whether the CNLOP Board directly infringed Geophysical's copyright.

As explained, domestic conduct is a necessary element of a copyright infringement plaintiff's claim.[58] But if, as alleged here, the defendant induced or encouraged *in the United States* infringement that then occurred *outside the United States*, we face an issue that neither the Supreme Court nor we have addressed. We find the Ninth Circuit's decision in *Subafilms, Ltd. v. MGM-Pathe Communications Co.*[59] instructive.

In *Subafilms*, the en banc Ninth Circuit held that "when the assertedly infringing conduct consists solely of the authorization within the territorial boundaries of the United States of acts that occur entirely abroad[,] . . . such allegations do not state a claim for relief under the copyright laws of the United

---

[57] *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005).
[58] *See supra* Part II(2).
[59] 24 F.3d 1088 (9th Cir. 1994) (en banc).

States."[60] That holding was founded on the view that the term "to authorize" in § 106 of the Copyright Act was not intended to give rise to a protectable right of authorization in copyright holders, but rather to invoke the pre-existing doctrine of contributory liability.[61] And under that doctrine, there can be no liability for contributory infringement "unless the authorized or otherwise encouraged activity itself could amount to infringement."[62]

We are not persuaded by authority to the contrary. In *Curb v. MCA Records, Inc.*,[63] a district court outside of the Ninth Circuit rejected the holding of *Subafilms*, persuaded that "*Subafilms* relies upon a peculiar interpretation of the scope and nature of the authorization right in 17 U.S.C. § 106."[64] We are not persuaded that there is any such "authorization right." The structure of § 106 offers a numbered list of six protectable exclusive rights in copyright holders; "to authorize" is not among them:

> Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
>
> (1) to reproduce the copyrighted work in copies or phonorecords;
>
> (2) to prepare derivative works based upon the copyrighted work;
>
> (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
>
> (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;

---

[60] *Id.* at 1089.

[61] *Id.* at 1092.

[62] *Id.*

[63] 898 F. Supp. 586 (M.D. Tenn. 1995).

[64] *Id.* at 594.

> (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and
> (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.[65]

The phrase "to authorize" appears in the preamble to the list of exclusive rights alongside "to do." We believe that this structure supports the conclusion that "to do" and "to authorize" refer to direct and contributory infringement, respectively, but that infringement in either case must be predicated on one of the listed exclusive rights. So codified, the doctrine of contributory infringement requires that the underlying direct infringement upon which it is predicated be actionable under the Copyright Act.[66]

In short, we follow the holding of the Ninth Circuit in *Subafilms*. Where a copyright plaintiff claims contributory infringement predicated on direct infringement that occurred entirely extraterritorially, the plaintiff has stated no claim. Geophysical alleges that TGS authorized in Houston the CNLOP Board to infringe Geophysical's copyright in Canada by creating copies in Canada and then exporting them. This fails to state a claim of contributory infringement because it alleges authorization of alleged direct infringement that occurred entirely extraterritorially. The district court correctly dismissed the claim on that basis.

This result is not changed by the fact that the underlying alleged direct infringement involved the CNLOP Board's exportation of allegedly infringing material to the United States. That the United States was the destination does

[65] 17 U.S.C. § 106.
[66] PATRY, *supra* note 25, at § 21:46.

not convert the CNLOP Board's conduct into domestic conduct for the purpose of the Copyright Act. The act of "exportation" occurred entirely in Canada, and is beyond the reach of the Copyright Act notwithstanding the destination. This division of cross-border conduct into discrete acts of "exporting" from one country and "importing" into another is supported by the Copyright Act, which does the same.[67]

Because we affirm on the basis of extraterritoriality, we need not consider whether the act of state doctrine would bar Geophysical's contributory infringement claim.

## IV.

Because we remand this case for further development on one of Geophysical's claims, and because of a relevant intervening Supreme Court decision, we vacate the district court's award of attorneys' fees and costs. Upon remand, the district court is free to entertain a motion for attorneys' fees and costs after its disposition of Geophysical's remaining claim, mindful of the Supreme Court's recent guidance on awards of attorneys' fees in copyright cases.[68] We leave to the district court to apply the standard announced in *Kirtsaeng II*. It may consider in its entertainment of that motion the dismissal of the claims that we affirm here, but in the interest of allowing it to give full consideration and apply the appropriate standard, we vacate its award.

## V.

We affirm the district court's dismissal of Geophysical's direct infringement claim to the extent that it was based on infringing acts by TGS after it received copies of Geophysical's seismic lines. We affirm the district court's dismissal of Geophysical's claim of removal of copyright management

---

[67] *See* 17 U.S.C. § 602(a)(1)-(2).

[68] *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979 (2016) [*Kirtsaeng II*].

information. We reverse the district court's dismissal of Geophysical's direct infringement claim to the extent that it was based on importation of unlawfully made copies and remand for further proceedings on that claim in light of the principles discussed here. We affirm the district court's dismissal of Geophysical's contributory infringement claim. We vacate the district court's award of attorneys' fees and costs, which the district court may reconsider at the appropriate time after its disposition of the remanded claim.